UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SARAIYA SOLOMON,

                                              Plaintiff,

     -v.-

                                              5:11-CV-226
HUMAN SERVICES COALITION OF            (GTS/ATB)
TOMPKINS COUNTY, INC., *et al.*

                                            Defendants.

SARAIYA SOLOMON
Plaintiff *pro se*

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed *in forma pauperis* filed by plaintiff, Saraiya Solomon. (Dkt. Nos. 1, 2).

**I.**    *In Forma Pauperis* **(IFP) Application**

A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  The Court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.     Complaint**

Plaintiff is a black female, who participates in a federally funded employment program, known as the Senior Community Service Employment Program (SCSEP), administered by Experience Works, an organization funded by the United States Department of Labor (USDOL). (Compl. at ¶ 6, 26). Plaintiff alleges that defendants have discriminated against her because of her race, and that they have retaliated against her because she complained about the discrimination to the USDOL.

Plaintiff alleges that she was assigned by SCSEP to defendant Human Services Coalition of Tompkins County, Inc. (HSC) for on-the-job training and transition into the workforce. (Compl. ¶ 8). She began her assignment in June of 2009. (Compl. ¶ 26). Plaintiff states that she was trained as an Information and Referral Specialist in HSC's 2-1-1 program. (Compl. ¶ 10). Plaintiff claims that between June and August of 2009, a client, who plaintiff had previously assisted, visited the call center to meet with plaintiff. (Compl. ¶ 29). Plaintiff took her client to the library for the meeting. (Compl. ¶ 30). Plaintiff states that the library was often used for meetings "with walk-in clients," for interviews, or for "other functions." *Id.*

Plaintiff alleges that while she and her client were in the library, plaintiff saw defendants Swayze and Johnson talking to each other in the hallway outside the library. (Compl. ¶ 31). Plaintiff states that defendant Johnson looked into the library and asked plaintiff and her client what they were doing. (Compl. ¶ 32). Plaintiff states that later, defendant Swayze told plaintiff that the "library was off limits as of that day." (Compl. ¶ 34). Plaintiff states that her client heard defendant Swayze's

comment and immediately told plaintiff that defendant Swayze "had made that edict because they were both black." (Compl. ¶ 35). Plaintiff states that she agreed with her client because she had previously used the library to speak with white clients, and nothing was ever said to plaintiff about using the library on those occasions. (Compl. ¶ 36).

Plaintiff alleges that in January of 2011, she sent an email to defendant Spadafora-Manzella, the 2-1-1 Call Center Manager, to let her know that plaintiff would be absent from work from the 19th through the 21st of January 2011. (Compl. ¶ 57). In the email, plaintiff informed defendant Spadafora-Manzella how plaintiff would make up the missing hours, and that she would be returning to work on January 24, 2011.[1] *Id.* Plaintiff alleges that when she returned to work on January 24, 2011, she was given an unwarranted written reprimand from defendant Spadafora-Manzella, signed by defendant Swayze, with a copy sent to defendant Schlather. (Compl. ¶¶ 52, 54). This reprimand stated that if plaintiff failed to follow proper "notifications procedures," the result would be a request to change her Experience Works placement. *Id.*

Plaintiff states that when she met with defendant Spadafora-Manzella at the end of the day on January 24, 2011, the defendant was "overly concerned" with the fact that the time off coincided with plaintiff's birthday, and that plaintiff had a new "hairdo." (Compl. ¶¶ 60-61). Plaintiff claims that the Information and Referral Call

---

[1] The court notes that January 21, 2011, was a Friday, thus, plaintiff stated that she would be returning to work on Monday, January 24, 2011.

Specialist Handbook does not specify how the communication of a request for time off must be made. (Compl. ¶ 66).  Plaintiff states that she was the only black person in the Call Center, and plaintiff believes that the other SCSEP trainees, interns, and other employees were not made to conform to the same requirements. (Compl. ¶ 3(h), 3(i)). Plaintiff alleges that this action was taken against her because of her race. *Id.*

Plaintiff claims that on January 25, 2011, she complained to the USDOL "about the unlawful discriminatory actions of said Defendants." (Compl. ¶ 42(a)).  Plaintiff states that as a result, she was called to a meeting with defendants Schlather and Zahler. (Compl. ¶ 42(b)).  Defendants Schlather and Zahler allegedly asked plaintiff for the letters that she sent to Experience Works and the USDOL Civil Rights Center. *Id.*  Plaintiff complied with this request.  Plaintiff states that on February 1, 2011, she requested to see her personnel file, but was told by defendant Swayze that HSC's attorneys would have to be consulted, and that she would have an answer by February 4, 2011. (Compl. ¶ 42(c)).  Plaintiff claims that on February 7, 2011, she was told by Experience Works staff, Joseph Scoglio that HSC would no longer host her. (Compl. ¶ 42(e)).

Plaintiff states that she sent a letter to defendant Dillon, stating her intent to bring a law suit, and explaining how she would like these discriminatory offenses remedied "in lieu of bringing such action." (Compl. ¶ 42(f)).  Plaintiff claims that on February 9, 2011, she contacted the HSC Board of Directors informing them of the discrimination that she had suffered, her intention to bring a law suit, and an explanation of how she would like them to handle the "discriminatory offenses in lieu

5

of bringing such action." (Compl. ¶ 42(g)). Plaintiff claims that the HSC Board of Directors did nothing to remedy the situation, and that defendants retaliated against her for complaining to the USDOL. (Compl. ¶¶ 3(d), 3(j)).

The complaint contains thirteen "Counts," including "Deprivation of Equal Access,"[2] Conspiracy to Deprive [sic] of Civil Rights," Willful Interference and Oppression of a Protected Activity," Retaliation, and "Tortious Interference with Contract," among others. Plaintiff also has a variety of state law "Counts," including "Intentional Infliction of Emotional Harm," and Negligent Infliction of Emotional Distress. (Compl. ¶¶ 24-88). Plaintiff cites violations of 42 U.S.C. § 1981 as well as violations of the New York Human Rights Law, N.Y. EXEC. LAW § 296. Plaintiff also alleges violations of some criminal civil rights statutes, 18 U.S.C. §§ 241, 245. (Compl. at ¶ 1). For a more specific recitation of plaintiff's facts, reference is made to the complaint. Plaintiff seeks injunctive and monetary relief. (Compl. ¶ 2).

## III. Criminal Statutes

Plaintiff is essentially alleging discrimination based on her race and retaliation for complaining about the alleged discrimination to the USDOL. It is well-settled that

---

[2] To the extent that plaintiff is attempting to assert some discrimination claims on behalf of her "client," the claim cannot survive. Generally, litigants do not have standing to assert the rights of others. *Carlen v. Dep't of Health and Human Services of Suffolk*, 912 F. Supp. 35, 42 (E.D.N.Y. 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). There are some exceptions that do not apply in this case. *See Singleton v. Wulff*, 428 U.S. 106, 112-16 (1976) (plaintiff may be permitted to invoke the court's jurisdiction where plaintiff's right to relief rests on the legal right of a third party). In any event, plaintiff does not state that she is raising a claim for her unnamed "client," but the court simply notes that in plaintiff's request for injunctive relief, she states that she wishes the court to "halt the discriminatory policy of preventing and harassing black people who would access the establishment . . . ." (Compl. ¶ 2).

there is no private right of action under federal criminal statutes such as 18 U.S.C. §§ 241, 242, or 245. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Marshall v. Webster Bank, N.A.*, 3:10-CV-908, 2011 WL 219693, *8 (D. Conn. Jan. 21, 2011) (citing cases); *Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp. 2d 465, 478 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000) (citations omitted).

In this case, any attempt by plaintiff to assert a cause of action under federal criminal statutes should be dismissed because plaintiff can never state a claim under these statutes. Thus, this court recommends dismissing any claims, based upon sections 241 or 245 of Title 18 of the United States Code. At this early stage, the rest of plaintiff's complaint may proceed.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for IFP (Dkt. No. 2) is **GRANTED,**[3] and it is

**RECOMMENDED**, that plaintiff's causes of action alleging violations of criminal statutes 18 U.S.C. §§ 241 and 245 be **DISMISSED WITH PREJUDICE**, and it is further

**RECOMMENDED**, that if this report is approved, it shall be

**ORDERED**, that the Clerk shall issue summonses and forward them, along

---

[3] The court notes that although plaintiff's application to proceed *in forma pauperis* has been granted, plaintiff will still be required to pay fees that she may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

with copies of the complaint[4] and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon the named defendants, and it shall be further

**ORDERED**, that a formal response to plaintiff's complaint be filed by the defendants or defendants' counsel as provided in the Federal Rules of Civil Procedure subsequent to service of process on the defendants, and it shall be further

**ORDERED**, that the Clerk be directed to schedule a Rule 16 conference before the assigned magistrate judge, and it shall be further

**ORDERED**, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel.  **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys may be stricken by the Court.**  Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation upon Plaintiff in accordance with the Local Rules.

---

[4] Plaintiff has completed the appropriate summonses, has submitted copies of her complaint, and has submitted the completed Marshal's forms for service when appropriate.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 4, 2011

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge