```
U.S. DISTRICT COURT - N.D. OF N.Y.
         FILED
       SEP 1 2 2011
AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

=====================================================

SARAIYA SOLOMON,

                                     **SURREPLY TO MOTION TO DISMISS**

    Plaintiff,

                                     Civil Action No:
                                     5:cv226
                                     GTS/ATB

    vs.

HUMAN SERVICES COALITION OF TOMPKINS COUNTY, INC.;
LEE DILLON, as agent of and individually; CHRISTINE
BARKSDALE, as agent of and individually, JAMES A. BROWN as
agent of and individually, PATRICIA CAREY as agent of and
individually, SUSAN DALE-HALL as agent of and individually,
JIM DENNIS as agent of and individually, DAVID G.EVELYN, MD
as agent of and individually, JIM HULL as agent of and individually,
JOHN T. LEMLEY as agent of and individually, SAOIRSE McCLORY
as agent of an individually, DEBORAH MOHLENHOFF as agent of and
individually, SHAWN MARTEL MOORE as agent of and individually,
RON PROVUS as agent of and individually, LENORE SCHWAGER
as agent of and individually, REVEREND PHILIP SNYDER as agent of
and individually, CAL WALKER as agent of and individually,
NANCY ZAHLER as agent of and individually, M.KATHLEN SCHLATHER,
as agent of and individually; EDWARD SWAYZE, as agent of and
individually, FRANCINE SPADAFORA-MANZELLA, as agent of and
individually; and CITY FEDERATION OF WOMEN'S ORGANIZATION
OF ITHACA NEW YORK INC., and SARAH JOHNSON, as agent of
and individually

Defendants.

_____

### PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S RESPONSE TO MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

1

The Plaintiff representing herself pro se opposes the Defendants' Human Services Coalition of Tompkins County Inc., (HSC) Lee Dillon, Christine Barksdale, James A. Brown, Patricia Carey, Susan Dale-Hall, Jim Dennis, David G. Evelyn, Jim Hull, John T. Lemley, Saoirse McClory, Deborah Mohlenhoff, Shawn Martel Moore, Ron Provus, Lenore Schwager, Reverend Philip Snyder, Cal Walker, Nancy Zahler, M. Kathleen Schlather, Edward Swayze, and Francine Spadafora-Manzella Motion to Dismiss; as the Plaintiff has stated claims upon which relief can be granted.

The Plaintiff will respond to the Defendant's claim that the Plaintiff has made 'numerous unverified allegations in an effort to build a colorable claim.' Unfortunately, for the Defendants the facts are what they are:

### The Plaintiff had a contract with HSC

The Plaintiff was accepted into the Senior Community Services Employment Program (SCSEP); and brought to the Defendants HSC, as a prospective host agency.

HSC accepted the Plaintiff as a SCSEP participant; and agreed to train the Plaintiff as a 211 Information and Referral Specialist.

The Information and Referral Specialist Training was well over before the end of the Plaintiff's 19 month tenure ended at HSC.

The formal agreements that were mandated to be signed by the host agency that the Plaintiff is presently aware of, were 1) the host agency agreement, 2) and a schedule agreement.

If those agreements were not agreed to and signed by Defendants Swayze and Spadafora-Manzella, the Plaintiff, and Experience Works personnel, there would have been no agreement, and the Plaintiff would not have been allowed to train/work at HSC.[1]

The Defendants claim that there was no contract; but if there were no need for a formal agreement, then Experience Works, the HSC Defendants, and the Plaintiff could have made a verbal agreement; however, that was not the case.

### The HSC Board Members Are Liable

HSC has a Board of Directors. That Board has the authority to hire and fire; which in affect makes them the 'employer' component of the organization. The Plaintiff gave evidence in her Opposition Motion that, according to the Attorney General for the state of New York, Board Directors of Nonprofit organizations have certain duties of care; and yes, one of the duties are 'to be familiar with the organization activities and to participate regularly in its governance' and another was to' read any literature produced as part of the organization's programs.'

The Plaintiff also provided evidence that the 211 Information and Referral Specialist Handbook that was produced by the HSC organization and given to her had no notification procedures in it.[2]

The Plaintiff reasserts, that the HSC Board Directors, and M. Kathleen Schlather breached the duty that they had towards her when they supported the unwarranted written reprimand given to her by Spadafora-Manzella, and signed by Swayze; and by their inactions when they were

---

[1] The Plaintiff references the host agency agreement, and the schedule agreement in her Opposition Motion as Exhibits 4& 5.
[2] The Plaintiff's Exhibit 9 was the 211 Information and Referral Specialist Handbook

3

informed of Swayze's and Defendant Johnson's interference, harassment, molestation, and discriminatory conduct towards the Plaintiff with respect to the library incident.

The Plaintiff went on to inform M. Kathleen Schlather, Nancy Zahler, Lee Dillon the Board Chair, and the Board Directors who she could contact about the discriminatory treatment that she suffered. Obviously, the Board supported Spadafora-Manzella and Swayze's discriminatory acdtions as they didn't respond to the Plaintiff's claims of discrimination; and supported the Plaintiff's removal from HSC.

The Board Directors breached their duty of care when, they did not know or care that there was no notification procedure in the 211 Information and Referral Specialist Handbook, literature that the organization produced and had given to the Plaintiff. Therefore, when the Plaintiff notified them of the unwarranted written reprimand it was their duty to know if Spadafora-Manzella and Swayze had acted discriminatorily towards the Plaintiff.

The Board Directors breached their duty of care to be familiar with the organization's activities and to participate regularly in its governance when, they did not know or care, when the Plaintiff notified them of the supposed 'permission rule' concerning the library incident; and that Swayze's and Johnson's 'sudden' enforcement of the so-called 'permission rule' was a pretext for racial discrimination. By their inactions, they supported Swayzes' and Johnson's actions.

Unfortunately for the HSC Defendants, the state of New York has set the guidelines regarding the Duties of Care for Non Profit organizations, not the Plaintiff, or the Defendants.

The Plaintiff was under the auspices of HSC as the host agency. HSC as an entity, its Board Directors, Swayze and Spadafora-Manzella all owed the Plaintiff a duty of care; to ensure that while she was being hosted by them that they would not discriminate against her based on her

4

race. The HSC Defendants in fact agreed to not discriminate against the Plaintiff when they signed the host agency agreements.[3]

### The Plaintiff Has Stated a Claim for Denial of Equal Access

As the Plaintiff has already stated in her Opposition Motion, the enforcement of the 'permission rule' was a pretext used by Swayze and Johnson to harass, interfere with, molest, and to deny the Plaintiff the full equal benefit, and privilege to use the library as enjoyed by white people. As the Plaintiff has already stated Swayze, Johnson or anyone else had never enforced the so-called 'permission rule' in her 19 month tenure at HSC; and in fact she never knew that a rule existed.

Furthermore, she had never been questioned, or interfered with when she had previously used the library to confer with white walk-in clients. And what is most damning to the Defendant's claim that they were not discriminating against the Plaintiff are the facts that 1) Swayze does not deny that he and Johnson conferred outside the library, 2) Swayze does not deny that immediately after the Plaintiff came out to the library he told her that the library was now off limits, and 3) Swayze does not deny that he never told the Plaintiff that permission was needed to use the library when the Plaintiff had used the library to confer with white walk-in clients. And in fact, 4) Swayze does not deny that he 'ever' informed the Plaintiff that permission was needed to use the library in the 19 months that she was at HSC. And, 5) Swayze nor Defendant Johnson has given any reason why the enforcement of the supposed 'permission rule' was so suddenly in need of enforcement on the occasion that the Plaintiff was conferring in the library with a black client.

---

[3] The Plaintiff points to the Host Agency agreements Exhibit 4, section C/Nondiscrimination

5

The Plaintiff sought the sworn affidavit of the walk-in client and submitted the exhibits that she has, to substantiate the statements that she made in the Complaint. If she had not, the Court would have no way to know what has transpired.

Unfortunately for the Defendants there is nothing disingenuous about the facts, the facts are what they are: The HSC Defendants nor the CFWO Defendants had never made known or enforced the so-called 'permission rule' in the Plaintiff's 19 months tenure; and the HSC Defendants and the CFWO Defendants and Sarah Johnson had never interfered with the Plaintiff when she used the library to confer with white clients.

The question for a jury to decide is, why it was 'suddenly' so important for the HSC Defendants and the City Federation of Women's Organization of Ithaca New York Inc., (CFWO) and Sarah Johnson to want the so-called 'permission rule' enforced on the occasion that the Plaintiff was sitting in the library with a black client; and had felt no need to attempt to enforce the supposed rule in the Plaintiff's 19 month tenure at HSC.

Clearly, they simply did not want two black people conferring in the library; yet the library was advertised as being 'free and open to all'.

Plaintiff Has Shown a Causal Connection Existed For a Retaliation Cause of Action

As the Plaintiff has already outlined in her Opposition Motion, that she has made a prima facie case of retaliation; in that **1)** she engaged in protected activity in opposition to discrimination, in this case it is undisputed that the Plaintiff complained to Experience Works and the United States Department of Labor's Civil Rights Center about the discriminatory conduct of HSC,( **2)** she suffered adverse consequences as a result of her complaints, in this case the Plaintiff was

immediately removed to another host agency without any investigation of the discriminatory charges that included the Plaintiff's presence or input, and (3) a causal connection exists between the protected activity and the adverse action, in this case 11 days after the Plaintiff complained of discriminatory conduct, the Plaintiff was removed from HSC. It has been settled by the United States Supreme Court in CBOCS West, Inc. v. Humphries 474 F. 3rd 387 (May 2008) that the Civil Rights Act of 1866 § 1981 as amended by the Civil Rights Act of 1991 includes retaliation claims.

### The Defendants Role in the Plaintiff's Transfer and the Temporal Proximity in Time

'The HSC Defendants admit that they contacted Experience Works; as they state that they 'made Experience Works aware of what they allege was an issue that had arisen with the plaintiff's failure to follow HSC's notification procedures'[4]. This contact was made immediately after the Plaintiff complained to Experience Works and the United States Department of Labor's Civil Rights Center about the discriminatory conduct of HSC.

The Plaintiff has already stated that the 211 Information and Referral Specialist Handbook given her had no notification procedures in it; and that email notification was an accepted form of communication.[5]

The Defendants are attempting to contend that the contact that they had with Experience Works played no part in the Plaintiff's transfer to another agency; which any reasonable person would know was not true.

The Plaintiff had written to Experience Works and complained of discriminatory conduct on HSC's part; and Experience Works did not respond to the Plaintiff's letter.

---

[4] Please see pg. 13 ¶ 2 of Defendant's Motion to Dismiss
[5] Please see Plaintiff's Opposition Motion, Exhibits 8 &12

7

It was after the Plaintiff had met with Schlather, and Zahler, and at their requests, given them copies of the letter she had written to Experience Works and the United States Department of Labor's Civil Rights Center, that HSC contacted Experience Works.

And, it was after HSC contacted Experience Works, that the Plaintiff was informed that she was being transferred to another agency.

In fact, Defendant Spadafora-Manzella stated to the Plaintiff on January 27, 2011 three days after the Plaintiff was given the written reprimand, and two days after the Plaintiff had complained of discrimination on January 25, 2011 while *actually* walking the Plaintiff out of the building after the Plaintiff's work day, (something that Spadafora-Manzella had never done previously) that 'the Plaintiff should consider leaving the agency and working elsewhere'.

When the Plaintiff met with Experience Works employees after HSC contacted them, the supposed issue of the Plaintiff's failure to follow HSC notification procedures' was never discussed with the Plaintiff; and has never been discussed with the Plaintiff.

It was clear that the Plaintiff was being transferred because she complained of discriminatory activities on the part of HSC; and HSC had notified Experience Works that they no longer wanted the Plaintiff at the organization because of her complaints of discrimination.

The Plaintiff asserts that there was a very definite causal connection between the time that she complained of discriminatory conduct on the part of HSC, the time that HSC contacted Experience Works, and her transfer to another agency; all of which is actionable. The Plaintiff's retaliation claim meets the 'temporal proximity' standard of <u>Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County(2nd Cir. 2001)</u>

Adverse Affect of Unwarranted Written Reprimand is Actionable

As the Plaintiff was only in the SCSEP in order to receive new skills, and reenter the job market, a negative reference from HSC would impede if not kill her chances for employment; thus defeating the Plaintiff's purpose of being in the SCSEP, and wasting the 19 months that she had already spent in the program.

As the Plaintiff has already stated in her Opposition Motion that, after the Plaintiff's complaint of discriminatory conduct, and the unwarranted written reprimand, any reasonable person could surmise that the HSC Defendants at their discretion would characterize the Plaintiff in any manner that they chose; thereby impeding her chances for employment

The United States Supreme Court held in <u>Staub v. Proctor Hospital 560 F. 3d 647</u> that ' the employer is liable where the actions of a supervisor motivated by discriminatory animus is the proximate cause of the employment action, so long as the supervisor intended the adverse action to occur. The Court explained that proximate cause "requires only some direct relation between the injury asserted and the injurious conduct alleged".

### Schedule Agreement is a Contract

The Schedule Agreement was in fact a contract. It was one component of the agreements between Experience Works, the HSC Defendants, and the Plaintiff. If there were no need for a formal agreement, then Experience Works, the HSC Defendants, and the Plaintiff could have verbal agreement. However, that was not the case. All of the parties agreed to certain things; and put it in writing.

Furthermore, while HSC was hosting the Plaintiff, the Plaintiff had the expectation and the HSC Defendants agreed when they signed the host agency agreement, that while the Plaintiff was performing her duties in the SCSEP at HSC she would not be interfered with, harassed or molested; or in any way be discriminated against because of her race. However that was not the case.

When the Plaintiff was treated differently when she conferred with a black client in the library, as opposed to when she conferred with white clients, the agreement that she had with HSC was breached.

When the Plaintiff returned to HSC on January 24, 2011 and was given an unwarranted written reprimand because Spadafora-Manzella claimed that she didn't approve of the Plaintiff's method of communication, the contract was breached; as email communication was an established way to communicate and had been used by the Plaintiff previously.

The true reason that Spadafora-Manzella issued the unwarranted written reprimand was because of the fact that she did not like the fact that the Plaintiff a black person had had an emergency near the Plaintiff's birthday, and that she wouldn't be coming in for certain days.

Spadafora-Manzella was further enraged because the Plaintiff had returned with a different hair do that Spadafora-Manzella had felt the need to refer to more than once in the day.

The agreement that the Plaintiff had with HSC was breached when Spadafora-Manzella, Swayze, and the other HSC Defendants imposed a fabricated notification procedure on the Plaintiff; and then issued her an unwarranted written warning; the effects of which would cause the Plaintiff harm when she sought work, and HSC was called as a recent employer reference.

## **CONCLUSION**

The Plaintiff respectfully requests that because of all of the reasons stated, that the Defendant's Motion to Dismiss be denied in its entirety.

Dated 8th day of September 2011

Saraiya Solomon, pro,se
111 South Street
Ithaca, NY 14850
Telephone (607) 262-9012
Saraiya.solomon@yahoo.com

## CERTIFICATION

I certify that on September___ 2011, I sent by U.S. mail a copy of the Surreply to, Stokes, Roberts, & Wagner, at 1405 Hanshaw Road, Ithaca New York 14850.

Dated this___day of September 2011

                                              Saraiya Solomon, pro,se
                                              111 South Street
                                              Ithaca, NY 14850
                                              Telephone (607) 262-9012
                                              Saraiya.solomon@yahoo.com

## CERTIFICATION

I certify that on September 8 2011, I sent by U.S. mail a copy of the Surreply to, Stokes, Roberts, & Wagner, at 1405 Hanshaw Road, Ithaca New York 14850.

Dated this 9 day of September 2011

Saraiya Solomon, pro, se
111 South Street
Ithaca, NY 14850
Telephone (607) 262-9012
Saraiya.solomon@yahoo.com

12