UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARAIYA SOLOMON,

                         Plaintiff,

                                               5:11-CV-226 (GTS/ATB)

v.

HUMAN SERVS. COALITION OF TOMPKINS
CNTY., INC.; CITY FED'N OF WOMEN'S ORG.
OF ITHACA NEW YORK INC.; *et al.*,

                         Defendants.
_____

APPEARANCES:                              OF COUNSEL:

SARAIYA SOLOMON
  Plaintiff, *Pro Se*
111 South Street
Ithaca, New York 14850

STOKES ROBERTS & WAGNER           ARCH Y. STOKES, ESQ.
  Counsel for the Human Services Defendants    PAUL E. WAGNER, ESQ.
1405 Hanshaw Road
Ithaca, New York 14850

PINSKY & SKANDALIS               GEORGE SKANDALIS, ESQ.
  Counsel for the City Federation Defendants
5790 Widewaters Parkway
Suite 250
Syracuse, New York 13214-1850

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

Currently before the Court, in this *pro se* employment civil rights action filed by Saraiya

Solomon ("Plaintiff") against two not-for-profit corporations and twenty-one employees and/or

board members thereof ("Defendants"), are the following three motions: (1) a motion to dismiss

for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6),

filed by the Human Services Coalition of Tompkins County Inc., and nineteen of its employees and/or board members ("the Human Services Defendants"); (2) a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), filed by the City Federation of Women's Organizations of Ithaca New York Inc., and one of its employees ("the City Federation Defendants"); and (3) a cross-motion for leave to file a Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), filed by Plaintiff.  (Dkt. Nos. 18, 23, 40.)  For the reasons set forth below, the Human Services Defendants' motion is granted; the City Federation Defendants' motion is granted; and Plaintiff's cross-motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Claims Surviving the Court's Decision and Order of May 27, 2011

Plaintiff filed her Complaint on February 28, 2011.  (Dkt. No. 1.)  Generally, in her Complaint, Plaintiff, a Black female, alleges that, beginning in June 2009, she was subject to discrimination as a participant in an employment program known as the Senior Community Service Employment Program ("SCSEP"), administered by Experience Works, an organization funded by the United States Department of Labor ("USDOL").  (*See generally id.*)  More specifically, Plaintiff alleges that, while she was assigned by SCSEP to Defendant Human Services Coalition for on-the-job training and transition into the workforce, certain Defendants discriminated against her because of her race and retaliated against her when she complained about this discrimination to the USDOL. (*Id.*)

The first incident of alleged discrimination occurred when Plaintiff was informed by one of the Defendants that the library, which was owned by Defendant City Federation of Women's Organizations and not leased by Defendant Human Services Coalition, was "off limits," after she was seen using that library to speak with a Black client.  (*Id.*)  The second incident of alleged

discrimination occurred approximately five to seven months later, when another Defendant gave her an unwarranted written reprimand for failing to follow proper "notification procedures" prior to missing work (specifically, by notifying her manager by email, with only a few hour's notice, that she would be missing work for three days due to "an emergency" that coincided with her birthday).  (*Id*.)  The first incident of retaliation occurred when, seven days after she complained to the USDOL about "the unlawful discriminatory actions of said Defendants," certain Defendants delayed three days in responding to her request for access to her personnel file.  (*Id*.) The second incident of retaliation occurred when, thirteen days after she made the aforementioned complaint to the USDOL, she was informed by Experience Works that Defendant Human Services Coalition would no longer host her.  (*Id*.)

Based on these (and other) factual allegations, Plaintiff's Complaint originally asserted thirteen causes of action against Defendants.  (*Id*. at ¶¶ 24-88.)[1]  However, on May 27, 2011, the Court issued a Decision and Order adopting the Report-Recommendation of United States Magistrate Judge Andrew T. Baxter recommending that the Court dismiss with prejudice the claims asserted in certain of Plaintiff's causes of action to the extent that they are premised on a violation of 18 U.S.C. § 241 and/or 18 U.S.C. § 245, or are asserted on behalf of a third party. (Dkt. Nos. 4, 6.)

As a result, surviving after the Court's Decision and Order of May 27, 2011, were, and are, the following thirteen claims: (1) a claim that certain Defendants deprived Plaintiff of her right of "Equal Access [to SCSEP]" based on her race in violation of 42 U.S.C. § 2000, N.Y.

---

[1]     For a detailed recitation of Plaintiff's original thirteen causes of action and the factual allegations on which they are based, the Court refers the reader to the Complaint in its entirety, and to United States Magistrate Judge Andrew T. Baxter's Report-Recommendation of March 4, 2011.  (Dkt. Nos. 1, 4.)

Human Rights Law, and New York State common law; (2) a claim that certain Defendants conspired "to Deprive [Plaintiff] of [Her] Civil Rights" based on her race in violation of N.Y. Human Rights Law, and New York State common law; (3) a claim that certain Defendants "Willful[ly] Interfe[d] [with] and Oppress[ed] [Plaintiff's Engagement in] a Protected Activity" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (4) a claim that certain Defendants "Retaliat[ed] [Against Plaintiff]" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (5) a claim that certain Defendants "Tortious[ly] Interfere[d] with [Plaintiff's] Contract[ual Rights]" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (6) a claim that certain Defendants "Adverse[ly] [A]ffect[ed] [Plaintiff's] Training/Employment Status" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (7) a claim that certain Defendants "[Discriminated Against Plaintiff Regarding the] Privileges Terms and Conditions of [Her] Employment" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (8) a claim that certain Defendants "Impos[ed] of Race-Biased Training/Employment Standard [on Plaintiff]" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (9) a claim that certain Defendants "Intentional[ly] Inflict[ed] Emotional Harm [on Plaintiff]" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (10) a claim that certain Defendants "Negligent[ly] Inflict[ed] of Emotional Distress [on Plaintiff]" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; (11) a claim that certain Defendants "Intentional[ly] Interfere[d] with [Plaintiff's] Contractual Relations" based on her race in violation of 42 U.S.C.

§ 1981, N.Y. Human Rights Law, and New York State common law; (12) a claim that certain Defendants "Intentional[ly] Interfere[d] with [Plaintiff's] Prospective Economic Advantage" based on her race in violation of 42 U.S.C. § 1981, N.Y. Human Rights Law, and New York State common law; and (13) a claim that certain Defendants "[Violated the] Duty of Care [Owed to Plaintiff]" based on her race (*Id.* at ¶¶ 24-88).

**B.     Briefing on Defendants' Motions to Dismiss**

**1.     Briefing on Human Services Defendants' Motion to Dismiss**

Generally, in their motion to dismiss, the Human Services Defendants assert the following six arguments: (1) the Complaint fails to state a claim against the individual board members, because it fails to allege facts plausibly suggesting that the board members played any role in the actions alleged (and because the board members cannot be, through mere negligence, held liable for any alleged violation of New York State law, given that the Human Services Coalition is a not-for-profit corporation); (2) the Complaint fails to state a claim for discrimination under 42 U.S.C. § 1981, 42 U.S.C. § 2000, and N.Y. Human Rights Law, because it fails to allege facts plausibly suggesting several necessary elements of such a claim, including the requirements that Defendants treated her differently than White employees, and that they did so because of her race; (3) the Complaint fails to state a claim for retaliation, because it fails to allege facts plausibly suggesting that she was subjected to sufficiently serious adverse action, that any such adverse action was taken by any Defendant in this case, or that any such adverse action taken by a Defendant in this case was taken because of her protected speech (as opposed to being taken because of Plaintiff's failure to follow appropriate absence-notification procedures); (4) the Complaint fails to state a claim for tortious interference with contract, because it fails to allege facts plausibly suggesting a breach of a contract, any Defendant's

intentional procurement of that breach, and/or any actionable damages resulting therefrom; (5) the Complaint fails to state a claim for intentional infliction of emotional distress, because it fails to allege facts plausibly suggesting extreme and outrageous conduct, severe emotional distress, and/or an intention to cause any such severe emotional distress; and (6) the Complaint fails to state a claim for negligent infliction of emotional distress, because it fails to allege facts plausibly suggesting extreme and outrageous conduct and/or any of the extremely narrow grounds for such emotional distress (e.g., any threat to her physical safety, any wrongful notification of a relative's death, or the wrongful handling of a family member's remains).  (*See generally* Dkt. No. 18, Attach. 1.)

Generally, in her opposition memorandum of law (the body of which is 47 pages in length),[2] Plaintiff (1) attacks the integrity and veracity of defense counsel,[3] (2) invokes the special solicitude ordinarily afforded to inexperienced *pro se* litigants, (3) repeats numerous of the factual allegations contained in her Complaint, (4) asserts various arguments and new allegations regarding her claims of discrimination, retaliation, and infliction of emotional

---

[2]   Although Plaintiff's opposition memorandum of law blatantly violates the Court's 25-page limit on such memoranda (which Plaintiff had previously been advised through her receipt of a courtesy copy of the District's *Pro Se* Handbook and Local Rules of Practice), the Court will ignore that violation, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

[3]   For example, in addition to accusing defense counsel of "tak[ing] undue advantage of the Plaintiff as a pro se litigant," Plaintiff accuses defense counsel of violating Fed. R. Civ. P. 11(b) by falsely certifying that his motion to dismiss was mailed to Plaintiff on July 21, 2011, when in fact the postmark on the enclosing envelop indicates that it was mailed on July 25, 2011.  (Dkt. No. 27, Attach. 2, at 4.)  Plaintiff is advised that, even assuming defense counsel's certification was in error (which is not at all clear from the record), July 21, 2011, was the deadline for the *filing* of the motion in question, not the deadline for the *service* of that motion.  (Dkt. No. 13.)  Furthermore, as the Court stated in its Text Order of August 5, 2011, a delay of merely four days in such service would not support sanctions against counsel, especially given the lack of resulting prejudice to Plaintiff.

distress, and (5) submits some 71 pages of exhibits to the Court for its consideration on the Human Services Defendants' motion to dismiss for failure to state a claim.  (*See generally* Dkt. No. 27, Attach. 2.)

Generally, in their reply, the Human Services Defendants argue that Plaintiff's response (1) improperly attempts to assert new allegations in an effort to bolster her otherwise-deficient claims, (2) fails to adequately respond to their argument that (based on Plaintiff's own factual allegations) the board members were not personally involved in the violations alleged, (3) improperly attempts to bolster her discrimination claims through the submission of her own affidavit and the affidavit of the Black client whom she was speaking with in the library (which are, in any event, conclusory in nature), (4) fails to adequately respond to their intentional-procurement argument or their actionable-damages argument regarding her retaliation claim, and (5) improperly relies on a "Participant Schedule" in support of her claim of intentional interference with contractual relations.  (Dkt. No. 30.)

On September 12, 2011, Plaintiff attempted to file a sur-reply to the Human Services Defendants' reply.  (Dkt. No. 32.)  Local Rule 7.1 of the Local Rules of Practice for this Court prohibits the filing of sur-replies.  N.D.N.Y. L.R. 7.1(b)(1).  Plaintiff had been informed of that fact before the time in question, through (1) her receipt of a courtesy copy of the District's Local Rules of Practice, and (2) the absence of a deadline for such sur-replies on the Court's briefing schedule (*see* Docket Entry dated July 21, 2011).[4]  Despite this fact, Plaintiff did not request leave of the Court to file such a sur-reply.  (*See generally* Docket Sheet.)  Even if she had

---

[4]       Indeed, Plaintiff was also informed of that need in June and July of 2005 when her counsel at the time moved *four times* for leave to file a sur-reply in the case of *Solomon v. Hartford Hosp.*, 02-CV-1116 (D. Ct.).

requested such leave, the Court would have denied that request, given (1) the lack of usefulness of her sur-reply, and (2) the fact that she was afforded more than adequate opportunity to brief the issues presented by the Human Services Defendants' motion, through the filing of her 47-page opposition memorandum of law.  For each of these alternative reasons, the Court strikes from the docket Plaintiff's unauthorized sur-reply.

### 2.     Briefing on City Federation Defendants' Motion to Dismiss

Generally, in their motion to dismiss, the City Federation Defendants assert the following four arguments: (1) in an effort to avoid repetition, and in the interest of judicial economy, the arguments made in the memorandum of law of the Human Services Defendants should be permitted to be adopted and incorporated by reference in the City Federation Defendants' memorandum of law;[5] (2) only Plaintiff's first, second, third, ninth, tenth and thirteenth claims (as described above in Part I.A. of this Decision and Order) are asserted against the City Federation Defendants; (3) even if the Court were to construe Plaintiff's other claims as somehow being asserted against the City Federation Defendants, those claims fail as a matter of law; and (4) the Complaint does not allege numerous facts necessary to subject the City Federation Defendants to liability under the circumstances, including facts plausibly suggesting

---

[5]     Ordinarily, the Court would deny this request, in part due to the fact that granting the request would effectively permit the requesting party to circumvent the Court's page limitation on memoranda of law.  *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n.65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.) ("A party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in another document.  Such a practice violates the Local Rule on page limitations."), *accord, Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.).  However, here, the body of the City Federation Defendants' memorandum of law is only three pages in length.  Furthermore, and more importantly, the Court has the duty to review the pleading sufficiency of Plaintiff's claims against the City Federation Defendants, regardless of whether the Court has come to learn of those deficiencies *sua sponte* or by motion.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

that (a) either of the two City Federation Defendants was an employer of Plaintiff or had any professional or contractual relationship with her, (b) the City Federation was an employer under either the N.Y. Human Rights Law or 42 U.S.C. § 2000a, or an employment agency or training program (or related entities) under the N.Y. Human Rights Law, and (c) the library in question was a place of "public accommodation, resort or amusement" under the N.Y. Human Rights Law, or a place of "public accommodation" under  42 U.S.C. § 2000a.  (Dkt. No. 23, Attach. 1.)

Generally, in her opposition memorandum of law (the body of which is 28 pages in length),[6] Plaintiff (1) repeats numerous of the factual allegations contained in her Complaint, (2) asserts various arguments and new allegations regarding her claims of discrimination, conspiracy, retaliation, and infliction of emotional harm, (3) responds to the thirteen pleading deficiencies identified in the City Federation Defendants' above-described arguments by arguing that those deficiencies do not, or should not matter, because of (a) the other allegations in her Complaint and new allegations that she has asserted, (b) her reading of the relevant statutes (which she supports with a citation to only one case, which regards the role of temporal proximity in evaluating a causal connection), (c) definitions provided by "Merriam Webster's Online Dictionary," and (d) statements made by the Defendant City Federation's website, and (4) submits eight pages of exhibits to the Court for its consideration on the City Federation Defendants' motion to dismiss for failure to state a claim.  (Dkt. No. 28, Attach. 3.)

Generally, in their reply, the City Federation Defendants assert the following five arguments: (1) Plaintiff appears to agree that only her first, second, third, ninth, tenth and

---

[6]      Again, the Court will ignore Plaintiff's violation of the Court's 25-page limitation in opposition memoranda of law, out of an extension of special solicitude to her as a *pro se* civil rights litigant.  *See, supra,* note 2 of this Decision and Order.

thirteenth claims (as described above in Part I.A. of this Decision and Order) are asserted against the City Federation Defendants; (2) based on Plaintiff's Complaint and opposition memorandum of law, it appears that each of these claims is based on the so-called "library incident"; (3) Plaintiff's subjective conclusion of racism (and the subject interpretation of her third-party declarant) is insufficient to plead a claim for racial discrimination; (4) according to Plaintiff's own factual allegations, the new "off limits" policy promulgated by one of the Human Services Defendants was directed not solely at Plaintiff but at all staff of Defendant Human Services Coalition; and (5) as previously argued in the City Federation Defendants' memorandum of law in chief, the Complaint does not allege numerous facts necessary to subject the City Federation Defendants to liability under the circumstances.  (Dkt. No. 29.)

On September 12, 2011, Plaintiff attempted to file a sur-reply to the City Federation Defendants' reply.  (Dkt. No. 31.)  For the same reasons described above in Part I.B.1. of this Decision and Order, the Court strikes from the docket Plaintiff's unauthorized sur-reply.

### C.      Briefing on Plaintiff's Cross-Motion for Leave to Amend

On September 22, 2011, Plaintiff filed a cross-motion for leave to file an Amended Complaint (Dkt. No. 34); and on October 17, 2011, Plaintiff filed a second cross-motion for leave to file a Second Amended Complaint (Dkt. No. 37).  On October 20, 2011, the Court denied both of Plaintiff's two cross-motions for the following three reasons: (1) they failed to include a supporting affidavit; (2) the failed to identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means; and (3) they failed to offer cause for failing to file her cross-motions to amend on or before September 12, 2011, when briefing closed on the parties' motions.  (Dkt. No. 38.) After receiving further briefing from Plaintiff on the issue, the Court deemed the denial of her

first two cross-motions to be without prejudice, out of special solicitude to her as a *pro se* civil rights litigant. (Text Order filed Nov. 8, 2011.)

On December 2, 2011, Plaintiff filed a cross-motion for leave to file a Third Amended Complaint. (Dkt. No. 40.) Generally, liberally construed, Plaintiff's cross-motion describes the proposed amendments as follows: (1) they "clarify the Complaint and correct any mistakes that were originally made in [it]"; (2) they "add additional pertinent facts"; and/or (3) they "add violations to the Fourteenth Amendment Section 1 of the United States Constitution [sic]." (*Id.* at ¶¶ F.2., F.3., F.4.) In addition, liberally construed, Plaintiff's cross-motion argues that there has been no undue delay on her part in making the motion because, "[a]s a pro se litigant the Plaintiff was confused and unclear about the timing regarding amending the Complaint. The Plaintiff thought that she could amend the Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure at any time *before trial* with either opposing counsel [sic] or the Court's permission." (*Id.* at ¶ F.2. [emphasis in original].)

Generally, in opposition to Plaintiff's cross-motion, the City Federation Defendants argue that Plaintiff's cross-motion should be denied for the following five reasons: (1) failure to serve a proper notice of motion and provide a return date for the motion, requiring the Court to set a return date and briefing schedule; (2) failure to include a supporting affidavit; (3) failure to identify the amendments in the proposed Amended Complaint through either a red-lined version of the original Complaint or other equivalent means, making it virtually impossible to determine what has been retained in the original Complaint, and what has been changed; (4) failure to offer cause for failing to file her motion to amend on or before September 12, 2011, when briefing closed on the parties' motions; and (5) the futility of the proposed amendments, which neither correct the pleading defects identified in Plaintiff's existing claims against the City Federation Defendants nor state a new Fourteenth Amendment claim against them that is actionable. (Dkt. No. 41.)

Generally, in opposition to Plaintiff's cross-motion, the Human Services Defendants argue that Plaintiff's cross-motion should be denied for the same five reasons identified by the City Federation Defendants (without attempting to incorporate those arguments by reference). (Dkt. No. 42.)

On December 27, 2011, Plaintiff filed a reply in further support of her cross-motion. (Dkt. No. 43.)[7] Generally, in her reply, Plaintiff (1) again asserts an *ad hominem* attack against defense counsel, (2) again invokes the special solicitude ordinarily afforded to inexperienced *pro se* litigants (for example, arguing that she did not file her motion to amend before September 12, 2011, because of her confusion as a *pro se* litigant), (3) states that she "feels that [her proposed amendments to] the Third Amended Complaint [are] clear," and (4) argues that "there are no 'significant' changes" made to her original Complaint in her proposed Third Amendment Complaint (with the exception of two paragraphs therein). (*Id*.)

The Court notes that, in her "reply," Plaintiff improperly addresses the merits of Defendants' initial motions, rendering that part of her proposed "reply" in actuality a sur-reply.[8] However, out of an extension of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court has disregarded that violation.

_____

[7]     Local Rule 7.1 of the Local Rules of Practice for this Court prohibits the filing of replies on non-dispositive motions (such as motions to amend) without prior leave of the Court. N.D.N.Y. L.R. 7.1(b)(2). However, because Plaintiff failed to serve a proper notice of motion and provide a return date for the motion, the Court was required to set a return date and briefing schedule. While doing so, the Court accidently set a deadline for Plaintiff's reply. (Text Notice filed Dec. 7, 2011.) Out of an extension of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court will consider Plaintiff's reply.

[8]     *Cf. Carlwood Dev. Inc. v. U.S.*, 10-CV-1773, 2011 WL 69374, at *1 (D. Nev. Jan. 10, 2011) (denying petitioner's motion to strike government's improper "cross-motion"–which did not "address[] any matters even remotely indicative of a motion for summary judgment" but rather merely responded to the matters raised by the petitioners in their opening brief–because "rather than striking any portion of the ['cross-motion'] itself, the Court will merely construe [it] as only a response to the [petitioner's] opening brief, and not a cross-motion," and strike the government's unauthorized reply on its improper cross-motion as "nothing more than a disingenuous attempt to get the last word").

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim

In his Report-Recommendation of March 4, 2011, Magistrate Judge Baxter correctly recited the legal standard governing a district court's *sua sponte* review of pleadings submitted by a plaintiff seeking to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 4, at 1-2.)  As a result, this standard is incorporated by reference in this Decision and Order, which is intended primarily for the review of the parties.  The Court would add only two brief points.

First, as the Court pointed out in its Decision and Order of May 27, 2011, the above-referenced pleading standard applies even to *pro se* litigants.  (Dkt. No. 6, at 6.)  While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 12 (and Fed. R. Civ. P. 8).[9]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 12 (and Fed. R. Civ. P. 8) are procedural rules that even *pro se* civil rights plaintiffs must follow.[10]  Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 214, n. 28 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

---

[9]      *See Vega v. Artus,* 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 214 & n.34 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).

[10]      *See Vega,* 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases).

Second, under the circumstances, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[11]  Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as

---

[11]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

effectively amending the allegations of his complaint–to the extent those papers are consistent with the allegations in the complaint.[12]

**B.      Legal Standards Governing Plaintiff's Claims and Defendants' Defenses**

Because Defendants have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims and their own defenses in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 18, Attach. 1; Dkt. No. 23, Attach. 1; Dkt. No. 29; Dkt. No. 30.)

**C.      Legal Standard Governing Motion to Amend**

Motions for leave to amend a complaint are governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993).  Nevertheless, leave to amend a complaint is not automatic; and a court may deny a motion for leave to amend where there is an apparent or declared reason not to grant leave to amend, "such as [1] undue delay, bad faith or dilatory motive on the part of the movant, [2] repeated failure to cure deficiencies by amendments previously allowed, [3] undue prejudice to

---

[12]      *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference.  Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, . . .  and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v.Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

the opposing party by virtue of the allowance of the amendment, [4] futility of amendment, etc." *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979).

With regard to the first factor described above (i.e., undue delay, bad faith or dilatory motive on the part of the movant), the Court notes that, where a motion is so belated as to violate a scheduling order, an additional requirement of good cause is imposed on the movant. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); Fed. R. Civ. P. 16(b)(4), (f)(C) ("A schedule may be modified only for good cause and with the judge's consent. . . .  On motion or its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order.").

Finally, in this District, a motion for leave to amend a pleading must (1) attach an unsigned copy of the proposed amended pleading, and (2) set forth specifically the proposed amendments, and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.  N.D.N.Y. L.R. 7.1(a)(4).

## III.  ANALYSIS

### A.  Human Services Defendants' Motion to Dismiss

After carefully considering the matter, the Court finds that the Human Services Defendants' motion to dismiss should be granted for each of the numerous alternative reasons stated in their memoranda of law.  (Dkt. No. 18, Attach. 1; Dkt. No. 30.)  *See also, supra,* Part I.A. of this Decision and Order.  The Court would add only the following six points.

First, even when construed with the utmost of special liberality, Plaintiff's Complaint does not allege that the so-called "library incident" occurred because *she* was Black, but because *her client* was Black.  As an initial matter, any claims that Plaintiff is attempting to assert on behalf of a third-party have already been dismissed.  (Dkt. Nos. 4, 6.)  In any event, the Complaint contains no facts plausibly suggesting that the "library incident" actually occurred because Plaintiff's client was Black.  Granted, the Complaint alleges that Plaintiff had never been stopped during the previous unspecified times she interviewed clients who were White.[13]  However, the otherwise-detailed Complaint is conspicuously devoid of any factual allegation plausibly suggesting that Plaintiff had been *seen* by Defendants Swayze and Johnson (or any Defendant) interviewing White clients in the library.

Second, even if the Complaint could somehow be liberally construed as alleging that the "library incident" occurred because *Plaintiff* was Black, there are no facts plausibly suggesting that fact.  Granted, the Complaint alleges that the library had been "often used" for such meetings (Dkt. No. 1, at ¶ 30), and that all other employees of Defendant Human Services Coalition are White (*id.* at ¶ 63).  However, the otherwise-detailed Complaint is conspicuously devoid of any factual allegation plausibly suggesting that the library had been used by any of the White employees; rather, the Complaint allege facts plausibly suggesting that it was Plaintiff *herself* who had previously used the library.  (*See, e.g.,* Dkt. No. 1, at ¶ 36.)  In any event, and more important, the otherwise-detailed Complaint is conspicuously devoid of any factual allegation plausibly suggesting that the White employees were *seen* interviewing White clients in the library, and permitted to continue to do so, by Defendants Swayze and Johnson (or by any Defendant).

---

[13]     For the sake of brevity, the Court will set aside the fact that any such interviews could have occurred during the year or so of part-time worked that Plaintiff had performed for Defendant Human Services Coalition before the incident.  (*See* Dkt. No. 1, at ¶¶ 6, 22, 28, 29, 67.)

Third, if anything, the factual allegations of the Complaint plausibly suggest that Plaintiff was asked not to use the library by Defendant Swayze because Defendant Human Services Coalition neither owned nor lease that space.  (Dkt. No. 1, at ¶¶ 11, 12, 20, 21, 30-32, 34.)

Fourth, despite Plaintiff's subjective perceptions, even when construed with the utmost of special liberality, Plaintiff's Complaint does not allege facts plausibly suggesting (1) that any Defendant in this action reprimanded Plaintiff because of her race,[14] (2) that any Defendant in this action delayed Plaintiff access to her personnel file due to either her race or her complaint to the USDOL,[15] (3) that any Defendant in this action caused Experience Works to change Plaintiff's host agency from Defendant Human Services Coalition to another agency due to either Plaintiff's race or her complaint to the USDOL, or (4) more important, that such a reprimand, delay or transfer harmed her sufficient to chill her speech.

Fifth, while under certain circumstances documents outside the four corners of a complaint may be considered by a court when contemplating a dismissal for failure to state a claim (*see, supra,* Part II.A. of this Decision and Order), the Court finds that those circumstances are not present in this case, except with regard to the following documents: (1) Plaintiff's letter to Defendant Dillon dated February 7, 2011, which is referenced in Paragraph 42.f. of her Complaint and provided in her response; (2) Plaintiff's email to certain Defendants on January 27, 2011, which appears to be referenced in Paragraph 85 of her Complaint and is provided in

---

[14]     For example, Plaintiff's Complaint alleges that her manager had reacted negatively when a White intern had not called in (or even emailed her) prior to failing to show up for work (plausibly suggesting that the notification procedure applied to White employees as well).  (Dkt. No. 1, at ¶¶ 62-64.)  Moreover, Plaintiff's Complaint alleges facts plausibly suggesting that Plaintiff's manager reprimanded her in part because she (with reason) believed that Plaintiff had misrepresented why she was taking the time off.  (*Id*. at ¶¶ 57-61.)

[15]     For example, Plaintiff's Complaint alleges that the delay in access to her personnel file was caused not by any Defendant in this action but by Defendant Human Services Coalition's "attorneys."  (Dkt. No. 1, at ¶¶ 42.b., 42.c., 42.d.)

her response; (3) the "Referral Call Specialist Handbook," which is referenced in Paragraph 66

of her Complaint and appears to be provided in her response; and (4) the "SCSEP Host Agency

Agreement," which appears to be the "contract" referenced in her Complaint and is provided in

her response.  In any event, even if *all* the documents in question were considered, the

documents would not correct the pleading defects in Plaintiff's claims.[16]

      Sixth, and finally, while a *pro se* plaintiff's papers in response to a defendant's motion to

dismiss for failure to state a claim may sometimes be considered as effectively amending the

allegations of his complaint to the extent those papers are consistent with the allegations in the

complaint (*see, supra,* Part II.A. of this Decision and Order), the Court finds that such

consideration is not appropriate in this case (which involves an 88-paragraph Complaint, some

75 pages of response briefs and 71 pages of exhibits, and a cross-motion to leave to amend).  In

any event, even if the Court were to so consider those response papers, they are either (1) so

conspicuously absent from Plaintiff's detailed Complaint as to be inconsistent with that

Complaint or (2) insufficient to correct the pleading defects in Plaintiff's claims.[17]

---

[16]     For example, Plaintiff's response papers contain an email message that she sent to various Defendants on January 27, 2011, indicating that it was she herself who offered to give to Defendants the letter of complaint she submitted to the USDOL (contrary to her allegation that, on January 28, 2011, certain Defendants asked to see the letter of complaint she submitted to the USDOL, *see* Dkt. No. 1, at ¶ 42.b.).  (Dkt. No. 27, Attach. 17, at 2.)  Moreover, Plaintiff's response papers contain two email messages indicating that (1) Plaintiff herself did not receive a written reprimand after failing to follow the notification procedure in question on May 14, 2010, and (2) she failed to follow the notification procedure in question also on December 15, 2010 (plausibly suggesting that it was not race but repetitiveness that played a role in the decision to issue her a written reprimand when she failed to follow the notification procedure in January 2011).  (Dkt. No. 27, Attach. 10, at 2-3.)  Furthermore, Plaintiff's response papers contain a letter she promptly sent to Defendant Dillon following the incidents of January and February 2011, threatening to sue if her numerous demands were not met (plausibly suggesting that the alleged adverse action she experienced did not in any way chill her speech).  (Dkt. No. 27, Attach. 12, at 3-5.)

[17]     For example, Plaintiff's response papers do not describe the name of any White employee who did *not* receive a written reprimand after failing to follow the notification procedure in question on a specific date.  (*See generally* Dkt. No. 27.)

For all of these reasons, the Court grants the Human Services Defendants' motion to dismiss.

**B.     City Federation Defendants' Motion to Dismiss**

After carefully considering the matter, the Court finds that the City Federation Defendants' motion to dismiss should be granted for each of the numerous alternative reasons stated in their memoranda of law.  (Dkt. No. 23, Attach. 1; Dkt. No. 29.)  *See also, supra,* Part I.B. of this Decision and Order.  The Court would add to this analysis the six points stated above in Part III.A. of this Decision and Order.

For all of these reasons, the Court grants the City Federation Defendants' motion to dismiss.

**C.     Plaintiff's Cross-Motion for Leave to Amend**

After carefully considering the matter, the Court finds that Plaintiff's cross-motion to amend should be denied for each of the numerous alternative reasons stated Defendants' opposition memoranda of law. (Dkt. Nos. 41, 42.)  *See also, supra,* Part I.C. of this Decision and Order.  The Court would add only the following two points.

First, neither Plaintiff's initial motion papers nor her reply on that motion is supported by an affidavit, in violation of Local Rule 7.1(a)(2).  Rather, the one-page "affidavit" submitted by Plaintiff with her initial motion papers is neither notarized nor sworn to pursuant to 28 U.S.C. § 1746.  (Dkt. No. 40, at 6-7.)  In any event, all the "affidavit" states is "I, Saraiya Solomon affirm that I am the Plaintiff in the above entitled action; and respectfully request this Court to grant the Plaintiff's Motion for Leave to Amend the Complaint; and that statements made in the Complaint are true to the best of the Plaintiff's knowledge."  (*Id.*)  The "affidavit" does not contain the factual and procedural background that is relevant to her motion (for example, an explanation of her failure to file the motion before December 2, 2011) as required by Local Rule

7.1(a)(2), nor does it specifically set forth each of the proposed amendments in an effort to comply with Local Rule 7.1(a)(4). Moreover, the "affidavit" provided by Plaintiff in her reply is substantively the same as the one she provided in her underlying cross-motion. (Dkt. No. 43, Attach. 1, at 1-2.) It too does not contain the factual and procedural background that is relevant to her motion as required by Local Rule 7.1(a)(2), nor does it specifically set forth each of the proposed amendments in an effort to comply with Local Rule 7.1(a)(4). (*Id.*) Plaintiff's failure to provide an affidavit with her reply is simply unforgivable, given that she had been advised of her need for an affidavit at least *six* times before filing her reply.[18]

Similarly, neither Plaintiff's initial motion papers nor her reply on that motion identifies the amendments in her proposed Third Amended Complaint, either through the submission of a red-lined version of her original Complaint or other equivalent means, in violation of Local Rule 7.1(a)(4). Rather, the "red-lined" version of the original Complaint submitted by Plaintiff simply contains a continuous line through *every* word in the second through eighth-eighth paragraphs of that Complaint. (Dkt. No. 40, at 9-25.) Simply stated, that version does not identify the specific changes that Plaintiff is proposing. (*Id.*) Again, her failure to provide such a version of her original Complaint with her reply is simply unforgivable, given that she had advised of the need for that version at least *six* times in this action.[19] While the Court may be inclined to excuse

___

[18]     More specifically, the Court finds that Plaintiff received notice of the need for an affidavit, through the following: (1) her receipt of a courtesy copy of the District's Local Rules of Practice, on March 7, 2011 (Dkt. No. 5); (2) her receipt of a courtesy copy of the District's *Pro Se* Handbook, on March 7, 2011 (Dkt. No. 5); (3) her receipt of the Court's Decision and Order of October 20, 2011 (Dkt. No. 38); (4) her receipt of the Court's Text Order of November 8, 2011; (5) her receipt of the City Federation Defendants' opposition memorandum of law dated December 13, 2011 (Dkt. No. 41); and (6) her receipt of the Human Services Defendants' opposition memorandum of law dated December 19, 2011 (Dkt. No. 42).

[19]     Specifically, the Court finds that Plaintiff received notice of the need for such a version of her original Complaint, through the following: (1) her receipt of a courtesy copy of the District's Local Rules of Practice, on March 7, 2011 (Dkt. No. 5); (2) her receipt of the Court's Decision and Order of October 20, 2011 (Dkt. No. 38); (3) her receipt of the Human

certain procedural violations (*see, supra,* Part I of this Decision and Order), the Court need not, and does not, excuse these violations, which impermissibly shift onto the Court (and opposing counsel) the heavy burden of attempting to discern, at their own peril, the proposed amendments to a lengthy and complex complaint.

For these reasons, the Court can, and does, base its denial of Plaintiff's cross-motion on the ground that she has willfully failed to (1) provide an affidavit and (2) identify the amendments in the proposed Third Amended Complaint, either through the submission of a red-lined version of her original Complaint or other equivalent means.

Second, in any event, the following relevant factors weigh decidedly against granting Plaintiff's cross-motion under the circumstances: (1) Plaintiff has failed to sufficiently explain why she waited until December 2, 2011, to bring her cross-motion, which was due as early as August 29, 2011 (the deadline for her opposition to Defendants' initial motions to dismiss),[20] and at the very latest on September 12, 2011, when the Court closed the briefing on the parties'

---

Services Defendants' brief in opposition to her first motion to amend, dated October 17, 2011; (4) her receipt of the Court's Text Order of November 8, 2011; (5) her receipt of the City Federation Defendants' opposition memorandum of law dated December 13, 2011 (Dkt. No. 41); and (6) her receipt of the Human Services Defendants' opposition memorandum of law dated December 19, 2011 (Dkt. No. 42).

[20]     *See* N.D.N.Y. 7.1(c) ("If a party makes a cross-motion, it must join its cross motion brief with its opposition brief, and this combined brief may not exceed twenty-five (25) pages in length, exclusive of exhibits. A separate brief in opposition to the original motion is not permissible."); *see, e.g.*, *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (characterizing plaintiff's motion to amend, filed in response to motion to defendants' motion to dismiss under Fed. R. Civ. P. 12[b][6] as a "cross-motion"); *Deluca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 57 (S.D.N.Y. 2010) (characterizing plaintiff's motion to amend, filed in response to motion to defendants' motion to dismiss under Fed. R. Civ. P. 12[b][6] as a "cross-motion"). The Court notes that Plaintiff's failure to combine her briefing on her cross-motion with her briefing in opposition to Defendants' motions, as required by Local Rule 7.1(c), has unnecessarily confused and multiplied the issues presented by the parties' motions. The Court notes also that Plaintiff had been informed of that requirement before the time in question, through her receipt of a courtesy copy of the District's *Pro Se Handbook and Local Rules of Practice.*

motions;[21] (2) Plaintiff already had a fair opportunity to correct the pleading deficiencies in question, through her submission of *three* proposed amended complaints; (3) Defendants would be unduly prejudiced as a result of (a) the fact that they have already spent the time and incurred the expense of filing two separate motions to dismiss, and (b) the fact that as many as two years have now elapsed since the events giving rise to Plaintiff's proposed amendments (possibly affecting the memories of the numerous parties in the case, the ability to locate witnesses, and/or the preservation of evidence);[22] and (4) Plaintiff's proposed amendments are futile in that they fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

For these reasons, the Court can, and does, base its denial of Plaintiff's cross-motion on the alternative ground that the relevant factors–articulated in *Foman v. Davis*, 371 U.S. 178, 182 (1962)–weigh decidedly against granting that cross-motion.

---

[21]     The Court notes that the explanation Plaintiff proffered on December 2, 2011 (i.e., that she "thought that she could amend the Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure at any time *before trial* with either opposing counsel [sic] or the Court's permission") does not make sense, because (1) it acknowledges that, in the absence of opposing counsel's consent, permission to amend would need to be obtained from the Court *by motion,* (2) the deadline for such motions was September 12, 2011, and (3) in any event, its simply strains credulity to believe that Plaintiff, who litigated at least three other federal civil rights actions before filing the current one, did not know that the timeliness of a motion to amend is one of the factors to be considered in deciding such a motion.

[22]     *Cf. Barber v. U.S.*, 11-CV-1100, 2012 WL 1681978, at *1 (N.D.N.Y. May 14, 2012) (Suddaby, J.) ("[T]he prejudice posed to Defendant by Plaintiff's failure to prosecute is exacerbated somewhat by the age of the case (which arises from events allegedly occurring as far back as 2009) and the number of events giving rise to the case.  Under the circumstances, a further delay may well affect the memories of the numerous parties (and presumably witnesses) in the case, the ability to locate witnesses, and the preservation of evidence (particularly documentary evidence regarding the housing sale in question)."); *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.  Given the age of this case, that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall **STRIKE** from the docket Plaintiff's unauthorized sur-reply (Dkt. No. 31) with regard to the City Federation Defendants' motion to dismiss; and it is further

**ORDERED** that the Clerk of the Court shall **STRIKE** from the docket Plaintiff's unauthorized sur-reply (Dkt. No. 32) with regard to the Human Services Defendants' motion to dismiss; and it is further

**ORDERED** that the Human Services Defendants' motion to dismiss (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the City Federation Defendants' motion to dismiss (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend (Dkt. No. 40) is **DENIED**.

The Clerk of the Court is directed to issue a Judgment for Defendants and close this action.

The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Dated: September 11, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge